Filed 8/31/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re B.L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>B.L.,<br><br>      Defendant and Appellant. | A144366<br><br>(Contra Costa County<br>Super. Ct. No. J1400597) |

This is an appeal from the juvenile court of Contra Costa County in which B.L. (appellant or minor) had wardship declared after the court sustained two counts of violations of Penal Code sections 242 and 243.6. We have reviewed the proceedings and sustain each finding by the trial court.

**STATEMENT OF THE CASE**

On June 10, 2014, the district attorney of Contra Costa County filed an original wardship petition alleging appellant, age 15, committed two counts of misdemeanor battery on school employees (Pen. Code, §§ 242, 243.6). On January 27, 2015, following a contested hearing in the juvenile court, the allegations were each sustained.

On February 10, 2015, appellant was deemed a ward of the court and placed on probation at the home of her mother, with 60 days of home supervision that could be terminated after 30 days, depending on appellant's conduct.

On February 11, 2015, appellant filed a timely appeal.

**STATEMENT OF FACTS**

**1.     Prosecution Case**

Harry Campbell was a physical education instructor at John F. Kennedy High School in Richmond. On May 8, 2014, he was teaching at the school. During the eighth period, appellant, who was a student at the school, was in the physical education class of Wendolyn Eaglin.

The two classes of Campbell and Eaglin were in session on the blacktop of the school. At one point, appellant advised both Campbell and Eaglin her mother was waiting for her outside the school property, wanting to take her home. Appellant needed one of the teachers to unlock the school gates. Campbell advised appellant no instructor could give her early release, since the administration had not told them to do so. Appellant made a cell phone call and then told the teachers her brother was outside waiting for her and that they should open the gate. Campbell noticed appellant was becoming agitated and raising her voice. Campbell pointed out appellant's inconsistent remarks about who was picking her up, to which the minor replied: "Open the goddamn gate. I'm tired of you bald-headed, black-ass nigger or bitch, either one." Campbell disliked the remark, and said, "Your mother. Sorry, mom." With this response, appellant stated, "Oh really? Oh really? I'll beat your ass, bitch." Appellant had a Frisbee in her hand and struck Campbell with the object. As Campbell raised his arm to deflect the Frisbee, appellant punched Campbell in the face with her fist. She then kicked Campbell in the groin. Another male student tackled Campbell and forced him into the fence.

Eaglin approached the scene with her walkie-talkie operational; she wanted the staff to hear the commotion created by appellant in the yard. She hoped this would generate assistance. Appellant then slapped the device from Eaglin's hand, causing it to fall out of the teacher's hand.

Teacher Michael Fish observed this incident in the yard. He worked with emotionally challenged students at Kennedy. He saw Eaglin approach with the walkie-

2

talkie in her hand. Appellant called Eaglin a "black bitch" and slapped the radio out of the teacher's hand. Eaglin had said nothing provocative to appellant before this.

## 2.      Defense Case

Christopher V., age 16, was a student at Kennedy High School. He had known appellant since the seventh grade. He was with her in the yard when the incident happened. He recalled appellant became very upset when the teachers would not open the gate to allow her to leave the school property. Appellant used racial slurs and threatened the teachers. He recalled that Campbell came forward and made a remark about appellant's mother, which intensified the incident. Christopher believed Campbell struck appellant first, and that she then slapped him. Christopher recalled Campbell holding on to appellant and another student attempting to separate the two.

Christopher recalled Eaglin walking up to appellant with her walkie-talkie four to five inches from the minor's face. He saw appellant knock the device from Eaglin's hand, and it fell to the ground. Christopher did not believe witness Fish was on the campus the day of the incident.

Appellant testified she received a call from her brother advising her he was in the area of the school and was willing to pick her up. Otherwise, appellant would have had her mother come after school ended.

Appellant became upset when Campbell pointed out the inconsistencies in her remarks about who was picking her up. Her details regarding the Campbell matter are not really at issue in the appeal. Suffice it to say, the appellant's version is different from that of Campbell.

Regarding the conduct of Eaglin, appellant recalled the teacher was holding the walkie-talkie very close to appellant's face, close to her lips. Appellant "smacked it out of [Eaglin's] hand." Appellant believed she did not touch the person of Eaglin, only the device held by the teacher.

3

### 3.    Jurisdictional Findings

At the end of testimony, the prosecutor claimed a battery was committed against Eaglin when the walkie-talkie was knocked out of the teacher's hand.  It was "connected" to her person at the time.  He also pointed out appellant admitted knocking the device held by the teacher.  Defense counsel argued there was no touching of Eaglin's person, only the walkie-talkie.  Hence there was no battery of the person.  The trial court found the appellant's testimony lacked credibility.  On the Eaglin battery charge, the court stated:  "And I find the battery involving Ms. Eaglin was simply a response of the minor being out of control and slapping the walkie-talkie out of the hand of Ms. Eaglin.  [¶]  I disagree with [defense] counsel's rendition of the law.  The minor either struck the hand and the walkie-talkie or struck the walkie-talkie with such force applied to the walkie-talkie that force was applied to the hand of the victim."

### DISCUSSION

Appropriately, there is no dispute regarding the battery by appellant on Campbell. He was punched in the face and kicked in the groin while on duty as a physical education teacher at Kennedy High School.  The sufficiency of the evidence is not challenged on this charge here.

Regarding the battery on Eaglin, we find no dispute that the teacher was on duty at the time of the yard incident.  Indeed, she was the instructor in appellant's physical education class on the day of the offense.  Following sound principles regarding the law of gravity, we also know Eaglin was holding a walkie-talkie at the time appellant "knocked" it to the ground.  Without some degree of force, the item would not have fallen to the ground.  At the time, it was being used by Eaglin to alert yard supervisors of a disturbance in the class.  It fell, as the trial court found, after the agitated appellant struck the device held by Eaglin.  Without the delivery of such physical force by appellant, under these facts, the walkie-talkie would not have been released by the

4

teacher. This was not simply an incident of an attempt to touch the person of Ms. Eaglin. Instead appellant actually knocked, i.e., touched, an object held by the teacher.

Our review of California case law on the touching necessary for criminal battery discloses this is a matter of first impression. No case has held that contact by a defendant with an object held by another is a touching of the person herself. Nevertheless, we conclude the trial court correctly sustained the charges arising from appellant's contact with Ms. Eaglin. We agree with the court that the minor was seriously out of control, having already punched and kicked Mr. Campbell, factual behavior not challenged in this appeal. Ms. Eaglin happened to be within the circle of appellant's rage.

Battery is a general intent offense. (*People v. Lara* (1996) 44 Cal.App.4th 102, 107.) "A battery is any willful and unlawful use of force or violence upon the person of another." (Pen. Code, § 242.) The slightest degree of touching is sufficient. (*People v. Myers* (1998) 61 Cal.App.4th 328, 335.) " 'Any harmful or offensive touching constitutes an unlawful use of force or violence' under this statute. [Citations.] 'It has long been established that "the least touching" may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 404.)

In this instance, appellant admitted she knocked the transmitter out of the instructor's hand. In commenting on the intentional tort of battery, Prosser observes, "[I]f all other requisites of a battery against the plaintiff are satisfied, contact with the plaintiff's clothing, or with a cane, a paper, or any other object *held in the plaintiff's hand*, will be sufficient . . . . The interest in the integrity of the person includes all those things which are in contact or connected with the person." (Prosser & Keeton, Torts (5th Ed. 1984) § 9, pp. 39–40, italics added, fns. omitted.) There is no requirement of direct unlawful contact with the person of the victim in a tort context.

This assessment of the common law reported by Professor Prosser has been applied to the criminal offense of battery by other commentators. (See 2 Wharton (15th Ed. 2014 supp.) Criminal Law, §195, pp. 357–363; LaFave (2d ed. 2003) Substantive Criminal Law, §16.2, pp. 552–564.) Case law from other jurisdictions likewise supports the view the elements of civil and criminal battery are essentially identical. "[T]he willful use of force or the intentional striking of another person which is made criminal by the [Idaho] statute . . . need not be committed directly against the victim; it may be committed against anything intimately connected with the person of the victim." (*State v. Townsend* (1993) 124 Idaho 881, 885 [865 P.2d 972, 996].) Citing numerous cases from the tort law of battery, the court in *State v. Ortega* (1992) 113 N.M. 437, 440 [827 P.2d 152, 155], determined grabbing a flashlight from a police officer's hand was adequate proof of battery on a police officer. "Criminal law commentators also suggest that physical contact between the defendant and the victim is not required. . . . In addition, case law from other jurisdictions supports the proposition that there need not be direct touching of the victim's person in order for a battery to occur. Touching something intimately connected with the victim's body is sufficient." (*Ibid.* & see cases discussed.)

Similar reasoning was used in *Malczewski v. State* (Fla.App. 1984) 444 So.2d 1096, 1099, where the Florida Court of Appeal upheld a conviction for aggravated battery. The defendant stabbed a bag held by the victim, but made no contact with his person. This was deemed within the scope of the Florida battery statute since the bag was held by the victim. (*Ibid.*; see *Stokes v. State* (Ind. 1953) 115 N.E.2d 442, 443; *State v. Rembert* (Me. 1995) 658 A.2d 656, 657–658.) In our view, based on the foregoing persuasive authorities and the language of Penal Code section 242 as interpreted by our Supreme Court, knocking a walkie-talkie transmitter out of the hand of the person holding it is similarly within the proscriptive purview of the California statute.

6

Implicit in the trial court's ruling is that all the elements of the offense were established beyond a reasonable doubt.  We therefore uphold the juvenile court's finding the minor committed a battery on a school worker within the meaning of Penal Code sections 242 and 243.6.

## DISPOSITION

The judgment is affirmed.

_____

DONDERO, J.

We concur:


_____

MARGULIES, Acting P. J.


_____

BANKE, J.


A144366

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. Thomas M. Maddock |
| Counsel for Defendant and Appellant | Kelly, Hockel & Klein, P.C., Eileen M. Rice |
| Counsel for Plaintiff and Respondent | Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Acting Senior Assistant Attorney General, Laurence K. Sullivan and Donna M. Provenzano, Deputy Attorneys General. |