Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

KIM MACFARLANE, INDIVIDUALLY AND AS PARENT AND
NEXT FRIEND OF M.M., A MINOR CHILD, APPELLANT,
V. SARPY COUNTY SCHOOL DISTRICT 77-0037,
ALSO KNOWN AS GRETNA PUBLIC SCHOOLS,
A POLITICAL SUBDIVISION OF THE
STATE OF NEBRASKA, APPELLEE.

___ N.W.3d ___

Filed May 24, 2024.    No. S-23-592.

1. **Jurisdiction: Appeal and Error.** Aside from any factual findings, the trial court's ruling on subject matter jurisdiction is reviewed de novo, because it presents a question of law.
2. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
3. **Political Subdivisions Tort Claims Act: Statutes.** Whether the allegations made by a plaintiff set forth claims which are precluded by exemptions under the Political Subdivisions Tort Claims Act, and statutory interpretation, present questions of law.
4. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
5. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
6. **Political Subdivisions Tort Claims Act: Schools and School Districts.** Public school districts are political subdivisions for purposes of the Political Subdivisions Tort Claims Act.
7. **Political Subdivisions Tort Claims Act: Immunity: Negligence.** The Political Subdivisions Tort Claims Act eliminates, in part, the traditional immunity of political subdivisions for the negligent acts of their employees.

- 706 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

8. **Political Subdivisions Tort Claims Act: Immunity: Liability.** If a political subdivision proves that a plaintiff's claim comes within an exemption pursuant to Neb. Rev. Stat. § 13-910 (Reissue 2022), then the claim fails based on sovereign immunity, and the political subdivision is not liable.

9. **Immunity: Jurisdiction.** Sovereign immunity is jurisdictional in nature, and courts have a duty to determine whether they have subject matter jurisdiction over a matter.

10. **Negligence: Schools and School Districts.** Schools owe their students a duty of reasonable care.

11. ____: ____. Instructors generally have a legal duty to supervise students in a nonnegligent manner.

12. **Statutes: Appeal and Error.** Statutory language must be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

13. **Statutes: Legislature: Intent.** When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

14. **Statutes: Intent.** A court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.

15. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

16. **Statutes: Appeal and Error.** To give effect to all parts of a statute, an appellate court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible, and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.

17. **Statutes: Immunity: Waiver.** Statutes that purport to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.

18. **Immunity: Waiver.** To strictly construe against a waiver of sovereign immunity, courts broadly read exemptions from a waiver of sovereign immunity.

19. **Statutes: Immunity: Waiver.** A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such

- 707 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

overwhelming implication from the text as will allow no other reasonable construction.

20. **Political Subdivisions Tort Claims Act: Legislature: Words and Phrases.** Neb. Rev. Stat. § 13-910(13)(b)(i) (Reissue 2022) broadly lists nonexclusive examples of "recreational activities," which the Legislature described as "leisure activities."

21. **Actions: Pleadings.** A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Appeal from the District Court for Sarpy County: MICHAEL A. SMITH, Judge. Reversed and remanded for further proceedings.

Terry M. Anderson and Timothy R. O'Brien, of Hauptman, O'Brien, Wolf & Lathrop, for appellant.

Charles E. Wilbrand, Grant M. Paschke, and Robert J. Drust III, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## INTRODUCTION

A student's mother sued a school district for negligence under the Political Subdivisions Tort Claims Act (PSTCA),[1] alleging that the student was injured during a pole-vaulting practice "for and at" the school when he attempted a jump with the aid of a new pole and fell onto an unpadded section of the pole-vaulting box collar area. The district court sustained the school's motion to dismiss, concluding that the claim was barred by the PSTCA's "recreational activity" exemption.[2] The mother appeals. Because the mother has alleged sufficient

---

[1] See Neb. Rev. Stat. §§ 13-901 to 13-928 (Reissue 2022).

[2] See § 13-910(13)(a)(i).

- 708 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

facts to state a plausible claim, we reverse the district court's order and remand the cause for further proceedings.

## BACKGROUND

### Complaint and Motion to Dismiss

Kim MacFarlane filed the instant lawsuit under the PSTCA against Gretna Public Schools (GPS), but later amended the complaint to name the defendant as Sarpy County School District 77-0037, also known as GPS. Although not specifically alleged in the operative second amended complaint (the complaint), the parties seem to agree that at all relevant times, MacFarlane's child was a student at GPS. GPS is a political subdivision of the State of Nebraska.[3]

We recite the factual allegations in the complaint. On a specified date, the student attended a pole-vaulting practice "for and at" the school. During the practice, the student was "asked to try a new pole." He proceeded to do a jump with the aid of the new pole, but he did not make it to the top and over the bar. He then fell, landing in a "negligently unpadded" section of the pole-vaulting box collar area, and sustained injuries.

The complaint alleged two causes of action. The first stated that GPS was negligent in (1) "[f]ail[ing] to put proper padding in and around the pole vault box collar as required by the applicable ASTM specification standard set out in the Nebraska School Activities Association and National Federation of State Highschool Associations"; (2) "[f]ail[ing] to keep proper supervision"; and (3) "[f]ail[ing] to have proper safety protocols in place according to the guidelines set out in the Nebraska School Activities Association, National Federation of State Highschool Associations, and the NCAA." It sought damages for the student's resulting injuries. In the second cause of action, MacFarlane, as the student's

---

[3] See § 13-903(1).

- 709 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

parent, sought to recover damages for the past and future medical expenses caused by the alleged negligence of GPS.

GPS moved to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. The district court received briefing from the parties, held a hearing on the motion, and took the matter under advisement.

## District Court's Dismissal

The district court entered an order dismissing the action for lack of subject matter jurisdiction. The court concluded that GPS had not waived its sovereign immunity, because the claim fell within the PSTCA's recreational activity exemption.[4]

To reach that conclusion, the court applied the three-part test set forth in *Brown v. State*[5]—a recent case involving a similar exemption[6] under the State Tort Claims Act (STCA). On these facts, the court reasoned that all elements were satisfied because (1) "pole vaulting" fit the definition of recreational activity[7]; (2) the alleged injuries arose out of an "inherent risk" of the recreational activity,[8] when "not clearing the bar, not successfully planting the pole, not having the pole bend, and then falling are all inherent risks of pole-vaulting"; and (3) no fee was charged to participate in the "school sponsored pole-vaulting practice." Because the court dismissed the action on the basis of sovereign immunity, it did not consider GPS' alternative theory for dismissal.

MacFarlane filed a timely appeal, which we moved to our docket.[9]

---

[4] See § 13-910(13)(a)(i).

[5] *Brown v. State*, 305 Neb. 111, 939 N.W.2d 354 (2020).

[6] See Neb. Rev. Stat. § 81-8,219(14) (Cum. Supp. 2022).

[7] See § 13-910(13)(b)(i).

[8] See § 13-910(13)(b)(ii).

[9] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

- 710 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

## ASSIGNMENTS OF ERROR

MacFarlane assigns, restated, that the district court erred in (1) finding the student's activities at a school-sponsored practice session constituted recreational activities under the PSTCA, (2) finding the student's injuries resulted from "'inherent risks'" under the recreational activity exemption, and (3) sustaining GPS' motion to dismiss.

## STANDARD OF REVIEW

[1,2] Aside from any factual findings, the trial court's ruling on subject matter jurisdiction is reviewed de novo, because it presents a question of law.[10] Similarly, a district court's grant of a motion to dismiss is reviewed de novo.[11]

[3,4] Whether the allegations made by a plaintiff set forth claims which are precluded by exemptions under the PSTCA,[12] and statutory interpretation,[13] present questions of law. An appellate court independently reviews questions of law decided by a lower court.[14]

[5] When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.[15]

## ANALYSIS

[6-8] Public school districts are political subdivisions for purposes of the PSTCA.[16] The PSTCA eliminates, in part, the

---

[10] *Great Plains Livestock v. Midwest Ins. Exch.*, 312 Neb. 367, 979 N.W.2d 113 (2022).

[11] *Williams v. Frakes*, 315 Neb. 379, 996 N.W.2d 498 (2023).

[12] *Dion v. City of Omaha*, 311 Neb. 522, 973 N.W.2d 666 (2022).

[13] *Fountain II v. Douglas Cty. Bd. of Equal.*, 315 Neb. 633, 999 N.W.2d 135 (2024).

[14] *Clason v. LOL Investments, ante* p. 91, 3 N.W.3d 94 (2024).

[15] *Williams v. Frakes, supra* note 11.

[16] See § 13-903(1).

- 711 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

traditional immunity of political subdivisions for the negligent acts of their employees.[17] Except as otherwise provided, in all suits brought under the PSTCA, "the political subdivision shall be liable in the same manner and to the same extent as a private individual under like circumstances."[18] However, if a political subdivision proves that a plaintiff's claim comes within an exemption pursuant to § 13-910, then the claim fails based on sovereign immunity, and the political subdivision is not liable.[19]

[9] Here, the overarching issue on appeal is whether the district court erred in dismissing the action for lack of subject matter jurisdiction pursuant to § 13-910(13)(a)(i). Sovereign immunity is jurisdictional in nature, and courts have a duty to determine whether they have subject matter jurisdiction over a matter.[20]

In the subsections that follow, we:

• set forth the parties' arguments;
• summarize our case law involving schools and students prior to the adoption of the PSTCA's recreational activity exemption and our decision prompting a legislative response;
• quote the statutory amendment adding the recreational activity exemption;
• recite principles of statutory interpretation and construction, including those specific to sovereign immunity;
• interpret the crucial parts of § 13-910(13); and
• apply the pleading standard of plausibility.

---

[17] *Reiber v. County of Gage*, 303 Neb. 325, 928 N.W.2d 916 (2019).

[18] § 13-908.

[19] *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007), *overruled on other grounds, Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020).

[20] *Williams v. Frakes, supra* note 11.

- 712 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

### Parties' Contentions

GPS maintains that MacFarlane's claims under the PSTCA are barred by the recreational activity exemption. GPS asserts that the student was engaged in a recreational activity—"pole vaulting"[21]—at the time he was injured, that the student was not charged a fee, and that "falling"[22] is an inherent risk of pole-vaulting. One part of the exemption provides that the PSTCA "shall not apply" to "[a]ny claim relating to recreational activities for which no fee is charged . . . resulting from the inherent risk of the recreational activity."[23] Thus, if the student was not charged a fee and his injuries resulted from the inherent risk of a recreational activity, this exemption bars the claim.

MacFarlane does not dispute that the student was pole-vaulting at the time of his injuries, but she maintains that, for purposes of the exemption, the student was not engaged in a recreational activity. She generally argues that the student was pole-vaulting at a "school sponsored and supervised event,"[24] such that the school owed a duty to the student based upon the school-student relationship. MacFarlane also focuses on examples of "[r]ecreational activities"[25] in the exemption and argues that attending the school's pole-vaulting practice was not a "leisure activit[y]"[26] of the student.

In the alternative, MacFarlane highlights the meaning of "[i]nherent risk"[27] and argues that the failure to put proper

---

[21] Brief for appellee at 9.

[22] *Id.* at 13.

[23] § 13-910.

[24] Brief for appellant at 22.

[25] § 13-910(13)(b)(i).

[26] *Id*.

[27] § 13-910(13)(b)(ii).

- 713 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

padding around the pole vault area, as required by applicable standards, was not an inherent risk of participating in the school's pole-vaulting practice. GPS maintains that any of its negligent conduct was "immaterial."[28]

## SCHOOL-STUDENT CASES BEFORE
## 2007 NEB. LAWS, L.B. 564

[10] Before 2007, our school-student cases recognized the legal principle that a school district may be liable in permitting negligent conduct to occur on its premises when the school district knew, or reasonably should have known, that the negligent conduct on its premises presented an unreasonable risk of harm to those entrusted to the school.[29] More recently, we have clarified that foreseeability is not a factor to be considered by courts when making determinations of duty.[30] Simply put, schools owe their students a duty of reasonable care.[31]

[11] Instructors generally have a legal duty to supervise students in a nonnegligent manner.[32] For example, in one case,[33] a school was negligent when students enrolled in a welding class were not properly informed about the type of protective

---

[28] Brief for appellee at 14.

[29] *Crider v. Bayard City Schools*, 250 Neb. 775, 553 N.W.2d 147 (1996); *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986).

[30] *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

[31] See, *Thomas v. Board of Trustees*, 296 Neb. 726, 895 N.W.2d 692 (2017); *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 30.

[32] *Fu v. State*, 263 Neb. 848, 643 N.W.2d 659 (2002). See, e.g., *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000); *Johnson v. School Dist. of Millard*, 253 Neb. 634, 573 N.W.2d 116 (1998); *Brahatcek v. Millard School District*, 202 Neb. 86, 273 N.W.2d 680 (1979).

[33] *Norman v. Ogallala Pub. Sch. Dist., supra* note 32.

- 714 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

clothing to wear, they were not prevented from welding regardless of what they were wearing, and the teacher never inspected the types of clothing the students were wearing. The legal duty of schools applies both during students' regular classes[34] and in connection with sporting activities.[35]

Because MacFarlane relies largely upon our decision in *McIntosh v. Omaha Public Schools*,[36] and GPS' arguments attempt to distinguish the instant case from *McIntosh*, we recall the facts and rationale of the *McIntosh* decision.

In July 1993, a high school student and his father sued a school district under the PSTCA, claiming that the student was injured on its football field while participating in a 2-week spring football clinic conducted by the high school. The spring clinic was conducted after school was dismissed for the day during the 2-week period, and the participants did not pay a fee and did not use school equipment. In its answer, the school denied any negligence on its part and claimed, among other things, that the action was barred by the Recreation Liability Act (RLA).[37] Following trial, the district court found that the RLA did not apply. The school challenged that determination in a cross-appeal.

---

[34] See, e.g., *id.* (welding class); *Johnson v. School Dist. of Millard, supra* note 32 (music class); *Brahatcek v. Millard School District, supra* note 32 (physical education class).

[35] See *Hearon v. May*, 248 Neb. 887, 540 N.W.2d 124 (1995) (voluntary instruction following wrestling meet). See, also, *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch.*, 262 Neb. 66, 628 N.W.2d 697 (2001) (football game and practice); *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996) (spring football clinic), *overruled on other grounds, Bronsen v. Dawes County*, 272 Neb. 320, 722 N.W.2d 17 (2006), and *abrogated on other grounds, Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996); *Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989) (track meet).

[36] *McIntosh v. Omaha Public Schools, supra* note 35.

[37] See Neb. Rev. Stat. §§ 37-729 to 37-736 (Reissue 2016).

- 715 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

We pause here to briefly discuss the RLA. The RLA's stated purpose is to encourage landowners to open their property to the public for "recreational purposes" by limiting their tort liability.[38] When we decided *McIntosh*, the RLA applied to governmental entities,[39] and the PSTCA did not contain § 13-910(13).

On appeal in *McIntosh*, we explicitly rejected the school district's argument that the action was barred by the RLA. We explained that in order to facilitate the purpose of the RLA, a landowner need allow only some members of the public, including the plaintiff, to use his land without charge. Then, we reasoned:

> Clearly, a student participating in a clinic sponsored by his school's athletic program does not fall under the category of recreational use of land open to members of the public without charge. [The football field], as it pertained to McIntosh, was not open to members of the public without charge. Rather, at the time of McIntosh's injury, the field was open to students who were members or who intended to be members of the [high school] football team. The trial court was not clearly wrong in finding that the [RLA] does not apply to the case at bar.[40]

---

[38] See § 37-730.

[39] See, *Thies v. City of Omaha*, 225 Neb. 817, 408 N.W.2d 306 (1987), *overruled, Bronsen v. Dawes County, supra* note 35; *Gallagher v. Omaha Public Power Dist.*, 225 Neb. 354, 405 N.W.2d 571 (1987), *overruled, Bronsen v. Dawes County, supra* note 35; *Bailey v. City of North Platte*, 218 Neb. 810, 359 N.W.2d 766 (1984), *overruled, Bronsen v. Dawes County, supra* note 35; *Watson v. City of Omaha*, 209 Neb. 835, 312 N.W.2d 256 (1981), *overruled, Bronsen v. Dawes County, supra* note 35.

[40] *McIntosh v. Omaha Public Schools, supra* note 35, 249 Neb. at 538, 544 N.W.2d at 508.

- 716 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

We later held in the 2006 case of *Bronsen v. Dawes County*[41] that the RLA applies only to private landowners and, in doing so, overruled a quarter century of precedent.[42]

Legislative Response to
*Bronsen v. Dawes County*

Both the STCA and the PSTCA were amended in 2007[43] in response to our decision in *Bronsen*. Rather than amending the RLA to include governmental entities, the Legislature amended the STCA and the PSTCA to add the exemptions for tort claims related to "recreational activities."[44] While the exemptions under the STCA and PSTCA are nearly identical, the STCA refers to "[a]ny claim relating to recreational activities *on property leased, owned, or controlled by the state* for which no fee is charged . . . resulting from the inherent risk of the recreational activity . . . ."[45] The PSTCA omits the language italicized above that refers to property.[46]

Because the text of the PSTCA directly controls the issues presented on appeal, we set forth the "recreational activities"

---

[41] *Bronsen v. Dawes County, supra* note 35.

[42] See, *Iodence v. City of Alliance*, 270 Neb. 59, 700 N.W.2d 562 (2005), *overruled, Bronsen v. Dawes County, supra* note 35; *Teters v. Scottsbluff Public Schools*, 256 Neb. 645, 592 N.W.2d 155 (1999), *overruled, Bronsen v. Dawes County, supra* note 35; *Veskerna v. City of West Point*, 254 Neb. 540, 578 N.W.2d 25 (1998), *overruled, Bronsen v. Dawes County, supra* note 35; *McIntosh v. Omaha Public Schools, supra* note 35; *Thies v. City of Omaha, supra* note 39; *Gallagher v. Omaha Public Power Dist., supra* note 39; *Bailey v. City of North Platte, supra* note 39; *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984), *overruled, Bronsen v. Dawes County, supra* note 35; *Watson v. City of Omaha, supra* note 39.

[43] 2007 Neb. Laws, L.B. 564.

[44] §§ 81-8,219(14) and 13-910(13).

[45] § 81-8,219(14)(a) (emphasis supplied).

[46] See § 13-910(13)(a).

- 717 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFarlane v. Sarpy Cty. Sch. Dist. 77-0037
Cite as 316 Neb. 705

exemption under the PSTCA in its entirety and highlight crucial language. Section 13-910 provides, in relevant part:

The Political Subdivisions Tort Claims Act and sections 16-727, 16-728, 23-175, 39-809, and 79-610 shall not apply to:

. . . .

(13)(a) *Any claim relating to recreational activities for which no fee is charged (i) resulting from the inherent risk of the recreational activity*, (ii) arising out of a spot or localized defect of the premises unless the spot or localized defect is not corrected by the political subdivision leasing, owning, or in control of the premises within a reasonable time after actual or constructive notice of the spot or localized defect, or (iii) arising out of the design of a skatepark or bicycle motocross park constructed for purposes of skateboarding, inline skating, bicycling, or scootering that was constructed or reconstructed, reasonably and in good faith, in accordance with generally recognized engineering or safety standards or design theories in existence at the time of the construction or reconstruction. For purposes of this subdivision, a political subdivision shall be charged with constructive notice only when the failure to discover the spot or localized defect of the premises is the result of gross negligence.

(b) For purposes of this subdivision:

(i) *Recreational activities include, but are not limited to, whether as a participant or spectator: Hunting, fishing, swimming, boating, camping, picnicking, hiking, walking, running, horseback riding, use of trails, nature study, waterskiing, winter sports, use of playground equipment, biking, roller blading, skateboarding, golfing, athletic contests; visiting, viewing, or enjoying entertainment events, festivals, or historical, archaeological, scenic, or scientific sites; and similar leisure activities*;

- 718 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

(ii) *Inherent risk of recreational activities means those risks that are characteristic of, intrinsic to, or an integral part of the activity*;

(iii) Gross negligence means the absence of even slight care in the performance of a duty involving an unreasonable risk of harm; and

(iv) Fee means a fee to participate in or be a spectator at a recreational activity. A fee shall include payment by the claimant to any person or organization other than the political subdivision only to the extent the political subdivision retains control over the premises or the activity. A fee shall not include payment of a fee or charge for parking or vehicle entry.

(c) This subdivision, and not subdivision (3) of this section, shall apply to any claim arising from the inspection or failure to make an inspection or negligent inspection of premises owned or leased by the political subdivision and used for recreational activities.

(Emphasis supplied.) We will return to the two crucial terms—"recreational activities" and "inherent risk"—after reciting general and specific principles of statutory interpretation.

## Principles of Statutory Interpretation and Construction

[12-14] Statutory language must be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[47] When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[48] A court must look at the statutory objective to

---

[47] *Nebraska Journalism Trust v. Dept. of Envt. & Energy, ante* p. 174, 3 N.W.3d 361 (2024).

[48] *Nore Electric v. S & H Holdings, ante* p. 197, 3 N.W.3d 895 (2024).

- 719 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.[49]

[15,16] It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[50] To give effect to all parts of a statute, an appellate court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible, and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.[51]

[17-19] Statutes that purport to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.[52] To strictly construe against a waiver of sovereign immunity, courts broadly read exemptions from a waiver of sovereign immunity.[53] We have previously held that a waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[54]

### Interpretation of § 13-910(13)

[20] Section 13-910(13)(b)(i) broadly lists nonexclusive examples of "[r]ecreational activities," which the Legislature described as "leisure activities." We see no ambiguity in the Legislature's specification of examples. As we recently

[49] *Nebraska Journalism Trust v. Dept. of Envt. & Energy, supra* note 47.

[50] *Id.*

[51] *Id.*

[52] *Brown v. State*, 315 Neb. 336, 996 N.W.2d 56 (2023).

[53] *Id.*

[54] *Id.*

- 720 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

observed under the STCA's similar exemption, some of the listed activities are decidedly physical in nature (such as hiking, biking, and athletic contests), while others are more cerebral (such as viewing or enjoying historical or scenic sites).[55] But regardless of the level of activity required, the text requires that one must be engaged in a recreational or leisure activity as either a participant or a spectator.[56]

The text plainly defines "[i]nherent risk of recreational activities" as risks that are "characteristic of, intrinsic to, or an integral part of the activity."[57] Likewise, these words are plain and unambiguous.

To determine what risk or risks were involved, we first look to the activity described in the complaint filed by MacFarlane. It identified the student's activity as "practicing pole vaulting for and at [GPS]." In this instance, we assume without deciding that the student's activity was "recreational" within the meaning of § 13-910(13). But we cannot agree with GPS that the injuries alleged in the complaint necessarily resulted from the inherent risk of the student's activity. Our conclusion flows from the pleading standard of plausibility.

## Plausibility

[21] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[58] Because this matter was disposed of on a motion to dismiss, the factual record consists only of the allegations in the complaint. In this situation, the allegations are accepted as true, and all reasonable inferences are drawn in favor of the

---

[55] *Brown v. State, supra* note 5.

[56] See *id.*

[57] § 13-910(13)(b)(ii).

[58] *Holloway v. State*, 293 Neb. 12, 875 N.W.2d 435 (2016).

- 721 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

nonmoving party.[59] As noted above, we apply a de novo standard of review.[60]

The face of the complaint alleged that the student's injuries can be traced to an act of negligence by GPS rather than an inherent risk associated with his activity. The activity, as alleged in the complaint, was "practicing pole vaulting for and at [GPS]." And while there were certainly inherent risks associated with that activity—for example, falling—it is plausible, giving MacFarlane the benefit of all inferences, one or more other risks caused or contributed to the injuries. Thus, at this stage, it is too simplistic to accept GPS' characterization that "falling is what caused the [alleged] injury."[61]

According to the complaint, the injuries resulted from GPS' failures to put proper padding in and around the pole vault box collar as required by applicable standards, to properly supervise the student when he was using a new pole, and to have proper safety protocols in place according to applicable guidelines. Accepting the allegations as true and drawing all reasonable inferences in favor of MacFarlane, this harm was not necessarily the result of only a risk inherent to the activity in which the student was engaged.

Here, the ultimate question is whether a plausible path could exist for liability outside of the recreational activity exemption. At this point, we cannot rule that out. Nothing in this opinion should be read to foreshadow the application of the exemption to a developed factual record.

## CONCLUSION

We conclude that it was premature for the district court to dismiss MacFarlane's claim under the PSTCA based upon

---

[59] See *Williams v. State*, 310 Neb. 588, 967 N.W.2d 677 (2021).

[60] See, *Williams v. Frakes, supra* note 11; *Great Plains Livestock v. Midwest Ins. Exch., supra* note 10.

[61] Brief for appellee at 13.

- 722 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
MacFARLANE v. SARPY CTY. SCH. DIST. 77-0037
Cite as 316 Neb. 705

the recreational activity exemption. A factual record is necessary to resolve the issues raised by the complaint and the assertion of sovereign immunity by GPS. Accordingly, we reverse the district court's order and remand the cause for further proceedings.

Reversed and remanded for
further proceedings.